Cite as 2021 Ark. App. 221

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-20-614

| | |
|---|---|
| ANTHONY PHILIPS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | **Opinion Delivered** May 5, 2021<br><br>APPEAL FROM THE NEVADA COUNTY CIRCUIT COURT<br>[NOS. 50CR-16-33-2; 50CR-17-69-1; 50CR-17-99-1]<br><br>HONORABLE RANDY WRIGHT, JUDGE<br><br>AFFIRMED |

## LARRY D. VAUGHT, Judge

Anthony Philips appeals three sentencing orders entered by the Nevada County Circuit Court on July 1, 2020, revoking his suspended imposition of sentences (SIS) in case Nos. CR-16-33, CR-17-69, and CR-17-99 and sentencing him to thirty-five years' imprisonment. On appeal, Philips argues that the sentencing orders must be reversed because the circuit court violated his due-process rights when it denied his petition for a fitness-to-proceed examination. We affirm.

On March 14, 2018, Philips pled guilty in case No. CR-16-33 to one count of possession of methamphetamine with purpose to deliver, two counts of possession of drug paraphernalia, and one count of possession of marijuana with purpose to deliver; in case No. CR-17-69 to possession of methamphetamine; and in case No. CR-17-99 to delivery of

methamphetamine. In each case, the circuit court sentenced Philips to eight years' imprisonment with seven years' SIS, to run concurrently.

On May 19, 2020, the State filed petitions to revoke Philips's SIS in all three cases, alleging that he committed new offenses (on April 2 and 7, 2020),[1] failed to abstain from drugs or alcohol, and failed to pay court-ordered financial obligations. A revocation hearing was held on June 15, during which a chemist at the Arkansas State Crime Laboratory testified that she tested several items related to the new offenses allegedly committed by Philips on April 7 and that they tested positive for methamphetamine, cocaine, and marijuana. Philip's SIS supervisor testified that Philips signed the conditions of his SIS. At the conclusion of this testimony, the court announced that it was continuing the revocation hearing to June 18.

On June 17, Philips's counsel filed a petition for a fitness-to-proceed examination stating that he has "good cause to believe there is a reasonable suspicion that [Philips] is not fit to proceed to trial." On June 18, the revocation hearing resumed; however, Philips refused to leave the county jail for the hearing. The circuit court called Philips in jail, and Philips stated to the court that he chose not to be present for the hearing. Philips also told the court that he was dissatisfied with the public defender—who was representing him in this revocation proceeding and in a separate criminal matter that was set for trial—and was upset because the circuit court had previously denied his request for a new attorney. The circuit court advised

---

[1]The State alleged that on April 2, Philips committed the offense of public intoxication and that on April 7 he committed the offenses of simultaneous possession of drugs and firearms, possession of methamphetamine with purpose to deliver, possession of cocaine with purpose to deliver, possession of ecstasy with purpose to deliver, possession of marijuana with purpose to deliver, possession of firearms by certain persons, theft of property, and possession of drug paraphernalia (methamphetamine).

Philips that it had denied Philips's request for a new attorney because it was made too close to trial and because Philips's attorney is doing a good job. The circuit court then stated that Philips had removed himself from the courtroom and did not wish to talk to the court, "[s]o we will proceed with the hearing in absentia of Mr. Phillips."

Philips's counsel objected to proceeding without Philips, and the court overruled the objection stating that it had given Philips every opportunity to attend the hearing. The court stated that once it learned that Philips would not leave the jail for the hearing, the court arranged for him to attend via video or phone, but Philips had removed himself from both. The court further explained that it believed Philips's request for a new attorney was for the purpose of delay and that he had voluntarily and knowingly exited the hearing.

Philips's counsel then advised the court that he had filed a petition for a fitness-to-proceed examination because of Philips's strange behavior. Philips's counsel stated, "He started acting strange yesterday and that's why I filed the motion . . . . He's continued to act strange today." Counsel further said that he did not know if Philips had mental-health treatment in the past or if he was taking mental-health medications. Counsel said that the jail employees thought Philips "was acting crazy too or strange," but counsel thought Philips was "just being contrary."

In response, the circuit court stated that there is a difference between not wanting to participate as opposed to being incompetent and that the court needed to determine if sufficient evidence existed to order an examination. The circuit court then heard testimony from a jail administrator who testified that since Philips's incarceration in 2016, his only prescriptions were pain and muscle-relaxer medications and that he is not currently on any

3

medication. Thereafter, the circuit court denied counsel's petition for a fitness-to-proceed examination, and the revocation hearing resumed.

Detective Cody Ferguson of the Prescott Police Department testified that he executed a search warrant on Philips's residence on April 7 and found multiple plastic bags containing what he believed to be methamphetamine and marijuana. At the conclusion of the hearing, the circuit court orally found that Philips had violated the conditions of his SIS, revoked his SIS in all three cases, and sentenced him to seven years' imprisonment for three counts in case No. CR-16-33,[2] seven years' imprisonment for the one count in CR-17-69, and seven years' imprisonment for the one count in CR-17-99, all to run consecutively for a total of thirty-five years' imprisonment. After the court had entered sentencing orders in all three cases on July 1, 2020, Philips timely appealed. His sole point on appeal is that the circuit court erred in denying his petition for a fitness-to-proceed examination.

The conviction of an accused person while he or she is legally incompetent violates due process. *Cage v. State*, 2017 Ark. 277, at 5, 528 S.W.3d 825, 828 (citing *Jacobs v. State*, 294 Ark. 551, 744 S.W.2d 728 (1988); *Pate v. Robinson*, 383 U.S. 375 (1966); Ark. Code Ann. § 5-2-302(a) (Repl. 2013)). This court has long held that criminal defendants are presumed to be competent to stand trial and that they have the burden of proving otherwise. *Cage*, 2017 Ark. 277, at 5–6, 528 S.W.3d at 828. Our supreme court has defined the test of competency to stand trial as "whether a defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational, as well as factual,

---

[2]According to the subsequently entered July 1, 2020 sentencing order, the misdemeanor possession-of-marijuana-with-purpose sentence had "expired."

understanding of the proceedings against him." *Id.* at 6, 528 S.W.3d at 828 (citing *Haynes v. State*, 346 Ark. 388, 392, 58 S.W.3d 336, 339 (2001)).

Although in a revocation hearing a defendant is not entitled to the full panoply of rights that attend a criminal prosecution, he or she is entitled to due process. *Lewis v. State*, 2016 Ark. App. 503, at 6, 505 S.W.3d 725, 729. Because due process is a flexible concept, each particular situation must be examined in order to determine what procedures are constitutionally required. *Id.*, 505 S.W.3d at 729.

In *Lewis*, a probation-revocation case, the only issue on appeal was whether the circuit court erred in not ordering a competency evaluation sua sponte. In that case, our court held that a due-process evidentiary hearing is constitutionally compelled whenever there is substantial evidence that the defendant may be mentally incompetent to stand trial. *Id.*, 505 S.W.3d at 729 (citing *Porta v. State*, 2013 Ark. App. 402, 428 S.W.3d 585). In the context of a competency hearing, our supreme court in *Jacobs v. State* cited with approval the definition of substantial evidence set forth by the Eighth Circuit Court of Appeals in *Speedy v. Wyrick*:

> Under the rule of *Pate v. Robinson* . . . a due process evidentiary hearing is constitutionally compelled at any time that there is "substantial evidence" that the defendant may be mentally incompetent to stand trial. . . . Evidence is "substantial" if it raises a reasonable doubt about the defendant's competency to stand trial.

> . . . .

> Although the Supreme Court has not prescribed exact standards as to the quantum or nature of the evidence necessary to require a competency hearing, the Court has indicated that consideration of evidence relating to "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial" is appropriate.

294 Ark. 551, 553–54, 744 S.W.2d 728, 729–30 (1988) (citing *Speedy*, 702 F.2d 723, 726 (8th Cir. 1983) (citation omitted)).

In *Lewis*, we held that the circuit court did not err in failing to hold a competency hearing sua sponte because the court was not presented with substantial evidence calling into question the appellant's competency to stand trial. There, the evidence showed that the appellant had cut his mother's sofa and a stuffed animal, he was speaking gibberish at her home, he knocked a picture off her wall, and he was using methamphetamine. While the appellant stated that he had not been taking his Celexa and Adderall, the court was presented with no evidence or testimony regarding the effect of those medications. Also, despite appellant's unusual speech pattern, rambling, and testifying about irrelevant matters at his revocation hearing, it was also noted that he testified coherently, provided direct responses to each question, stated the reasons for his actions, and provided alternative explanations for some of the State's allegations against him. We held that this evidence was insufficient to require the court to sua sponte halt the proceedings and order a competency evaluation. *Lewis*, 2016 Ark. App. 503, at 7, 505 S.W.3d at 730.

Although there was some evidence of the appellant's irrational behavior in *Lewis*, this court held that the evidence presented was insufficient to require a competency examination. In the instant case, there is no evidence of Philips's mental incompetence. The petition for a fitness-to-proceed examination includes no information to serve as a basis for the request for the examination. It merely concludes that Philips's counsel has "good cause to believe there is a reasonable suspicion that [Philips] is not fit to proceed to trial." Philips presented no medical or lay witness evidence of mental-health conditions, treatment, or medication. Further, there

6

was no evidence of Philips's instability noted on the first day of the revocation hearing. Although there was evidence that he refused to attend the second day of the revocation hearing, that he was dissatisfied with his appointed counsel, and that he "hung up on the judge," there is no evidence that he behaved irrationally when he conveyed his intentions to the court. We also note that the circuit court found that Philips's behavior was motivated by his desire to delay his legal proceedings and that his counsel stated that Philips's behavior was merely "contrary."

Criminal defendants are presumed to be competent to stand trial, and they have the burden of proving otherwise. *Cage*, 2017 Ark. 277, at 5–6, 528 S.W.3d at 828. We hold that Philips failed to meet his burden and that the facts of this case do not satisfy the test for a constitutionally compelled competency hearing because there was no substantial evidence before the circuit court that such a hearing was necessary. That is, the evidence before the circuit court did not raise a reasonable doubt about Philips's competency to stand trial. Accordingly, we hold that the circuit court did not err in denying the petition for a fitness-to-proceed examination, and we affirm the circuit court's sentencing orders revoking Philips's SIS in case Nos. CR-16-33, CR-17-69, and CR17-99.[3]

Affirmed.

---

[3]We acknowledge and reject Philips's argument that the circuit court's investigation into whether there was substantial evidence to require a competency hearing was "grossly deficient." Before the circuit court initiated its questioning on the topic, there was no evidence—beyond his counsel's uncorroborated assertion—in the record to support Philips's petition for a fitness-to-proceed hearing. The circuit court's questioning was an attempt to discover some information to support Philips's petition. The evidence that was presented showed that he had no known mental-health conditions and was not taking mental-health medication.

KLAPPENBACH and WHITEAKER, JJ., agree.

*Potts Law Office*, by: *Gary W. Potts*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.